Okay, you're Ms. Blaine? Good morning, Ms. Blaine, and you're Mr. Toffanetti. Do you want to both step up, please, and identify yourselves for the record? My name is Pauline Blaine, and I'm here on behalf of the College Board of Law Enforcement. My name is William Toffanetti. I'm the Assistant State's Attorney. Fifteen minutes for each. Third time's the charm. This is the third time this case has been out. You, Ms. Blaine, may save out from your fifteen minutes any portion you wish for a response. I think you can safely assume we've read your briefs. Good morning. My name is Holly Blaine, and as I mentioned, I represent the appellant, Pauline Bowens, in this case. I am prepared to answer questions on all of the issues that were briefed. However, I would like to focus my time this morning on three issues. The first issue I'd like to focus on is... lean into it because your voice has some pockets in its timbre that make it difficult. You could also speak just a tad louder. Okay. Is that better? A little. That really doesn't amplify your voice. Okay. That just records... That's true. Okay. The first issue I would like to discuss today is the violation of Mr. Bowen's rights when Mr. Bowen's trial attorney was not allowed to cross-examine the State's eyewitness, Jeralene Childress, into her potential bias. What about the fact that there was no author of proof? That seems to be basically the only defense that the State offers on that question. If there was a modicum of testimony that goes beyond that, I don't want the State to feel that I've just preempted it from using it. But the offer of proof is a factor here. There was no offer of proof made. And you, in your defense, cite to Lynch. Yes. However, does Lynch cover your situation? Because in Lynch, there was enough in the question and in the backdrop to give the court a direction as to what the anticipated answers would be. Do you really get that here? I believe that we do. The question that was asked was, do you know Mr. Rios' sister? That's all that was asked. Correct. But the question itself lends to the suggestion that there is a relationship between the witness Now, but a trial judge has to make an immediate decision based on that question, and the trial judge in this case did. Yes. And said, even though the objection was made, the objection was sustained, at which point counsel probably should have said, may I make an offer of proof? What I'm trying to do is establish a relationship between this witness and the mother of the victim, which could tend to create a situation where her testimony is biased. Yes. Where the testimony will favor the victim. Right. Yes. But none of that was done. That's correct.  Yeah, but that's beside the point. Let's assume the court, if you had made the offer of proof, or I don't know if you tried the case or whatever, if the offer of proof was made, that the error would be established. But without the offer of proof, how can we rule that there is error? You can still reach the question through a plain error analysis. How is that? Plain error requires that the error is clear and obvious. Does plain error do away with the forfeiture occasion by the offer of proof, or simply by the forfeiture occasion by the failure to object? Plain error also applies to the failure of the offer of proof. How is that? What do you rely on for that? The plain error would apply because the error is both clear and obvious, and it also affects a substantial right in this case, the right being the right to cross-examine witnesses and confront witnesses against you. But at the new trial motion, the best that was presented was that they, Ms. Childress and the mother, not the sister, the question at trial was do you know the sister? But at the motion it was articulated that they both worked at the Salvation Army, that they lived in the same neighborhood, and therefore they may have known each other. Now, is that going to get us to the plain error, they may have known each other? Yes, because I believe that what happened in this situation is that the judge did not make, did not make the, sustain the objection on the grounds that there was, that the bias was, that the question was irrelevant. The judge didn't make a decision on whether or not there was bias, which bias is always relevant and material. So the judge in this case didn't exercise discretion. Well, you know, it raises an interesting question, because there are really two different steps to this analysis, I suppose. The first is whether he should have excluded it. And probably the answer would be the way the cases turn. Had he been given an offer of proof, he probably should have let it in. But now the question is under plain error, if we're going to use plain error, does it have to, is it outcome determinative? At that point, can we look to see whether this evidence of bias, insofar as it purported to go, namely that they were both members of the same organization, whether that would have been outcome determinative as far as the jury was concerned. And that's a whole other question, isn't it? I think Justice McBride is raising the point that the fact that they may have been biased by virtue of knowing each other might not very well be enough in a harmless error analysis, which is applicable to plain error, at least under Herring, right? Yes. Our position is that because we have very closely balanced evidence in this case, there's a credibility contest between Ms. Childress' testimony and the testimony of the defense witness, Ms. Archer, based on a line-of-sight evaluation of what exactly Ms. Childress saw. You're putting a terrible burden on the trial judge, though, when you say that based on a single question objected to on the basis of relevancy, and no offer of proof is being made, you want the trial judge to infer that your question would lead to a series of questions which were certainly probative of the witness's bias. What's a trial judge supposed to do when the objection is made based on relevance and the judge says sustained and you as defense counsel say nothing? You leave the trial judge in a pretty difficult position. I believe that it would fall to the trial judge to ask if there were any... I've never known a trial judge to decline an offer of proof. I, at this point, am willing to state that, and the state might very well want to push against the statement that I'm going to make, that the testimony of Ms. Childress was extremely crucial because she is the one, the only one, that testified to the deceleration of the automobile before it accelerated and hit him. That was the only evidence of intentional, of intent, or knowing or intending to kill. Yes. And without that testimony, I think there would be very little question as to whether the reckless homicide instruction, the lesser included offense, should have been given. So I think it's at the core, but the issue is whether you've made the record to establish the error in the Childress examination based on the lack of an offer of proof. Yes, and I believe that we can still get to the question of her testimony being the critical piece of evidence dealing with intent through the plain error examination. Again, she was the only witness that testified to the element of intent, and the jury should have heard if there was any bias in order to balance her testimony with that of Ms. Archer. You said you were going to argue... There are multiple issues raised. Yes. You said you were going to argue three. May I ask you what the other two are that you're going to focus on? Yes. Because I would like to know. What are the other two? The second issue I would like to talk about is the question of lesser included offenses. You mean giving the instruction? Yes. And what's the third you want to discuss? The third that I wanted to discuss was the cross-examination of Officer Hokuda on the stand. About the? About Mr. Bowen's statement. Can we move to lesser included offenses? Yes, I think that's a good place to move. All right. The State concedes that second-degree murder, reckless homicide, and involuntary manslaughter are lesser included offenses to murder. And what's your evidence of recklessness? The evidence of recklessness is that, again, the State's witness was the only witness that testified to any issue of intent. Ms. Childress was the only witness that said there was intent. The only eyewitness, in fact, to the actual crime. Yes. Was this a Toyota? Yes, it was. It was? It was. I was just, I mean, I didn't mean to throw that out there seriously. Oh, my gosh, the Toyota defense. I was not going to refuse myself as an unfortunate Toyota owner. The evidence of intent, though, I think the State would argue, is that the witness, Ms. Childress, Yes. said, and thank you, she said that she saw the car move and then accelerate and then strike Rios. Yes. Ms. Rios. So she is certainly the all-and-end-all of this case. I don't think there's any question. What other evidence is the other woman that the defense called, said that she observed or put herself in the place where this woman was and said she could not view where this accident would have occurred. Her sight. Yes. So there was this contrast. Yes. But that doesn't raise an inference of recklessness as a possible. But it does raise the inference that Ms. Childress did not see the car stop and then accelerate. I know. That's the whole case then. Yes. The impeachment testimony of the reconstructionist who came later and said you can't see anything from where she said she was standing. Yes. That goes to the ultimate issue of whether there was a crime at all. Yes. Not to whether or not there should be a lesser-included offense based on involuntary manslaughter. Let me answer that one for you. There was the so-called admission by the defendant that he hit the victim, that he struck the victim. Yes. Came back, returned to the scene. And that's a whole other question as to whether those statements should have been admitted at least to the extent of litigation. No. My only point was that the impeachment of the eyewitness didn't go to the issue ultimately to support your idea that a reckless or an involuntary manslaughter occurred. It went to the impeachment of that only eyewitness as being unable to see the crime itself. It had nothing to do with whether or not involuntary manslaughter was an appropriate instruction. That's why I asked you right off the bat, what evidence is there of recklessness in this record? Mr. Bowens admitted that there was an accident, that he was involved in the accident and made these statements. That's fine, but that doesn't have anything to do with recklessness rather than recklessness. Those statements didn't come in, though. No, they did not. Without those statements, can't you argue further why striking someone with a vehicle could indicate a showing of recklessness? I believe anytime there's an accident with a vehicle, there can be a… There must be an involuntary manslaughter instruction given then? In every instance involving an automobile? Is that what you're arguing? I hope not. No, I'm arguing that based on the facts of this case where the vehicle struck Mr. Rios and that he was on the sidewalk at the time, there can be an element of recklessness based on the fact that this incident occurred on the sidewalk. Wasn't there a position taken also that the actual cause of death was not the striking of Mr. Rios by the vehicle, but actually when he fell to the ground and struck his head on a rock? Yes. That that was part of the argument as to why this was not an intentional or knowing murder, but it was more reckless behavior striking an individual that… Yes, that then fell and hit his head on the ground. Yes. The third issue I would like to talk about is the cross-examination of Officer Potuka. This deals with the statements that Mr. Bowens made when he arrived at the scene of the accident. Mr. Bowens' statements did not come in. The state used a motion to eliminate to prevent Officer Potuka from testifying to these statements, which we feel is incorrect because… You want an unexcited veterans analysis, don't you? And you have one case that gives it to you, except in that case the trial judge gave it to you, and the appellate court upheld the trial judge. That same appellate court could very well have also upheld a trial judge who denied it to you because it's a matter within the latitude of the judge's discretion. And to that extent, if something is self-serving, isn't that a factor to be considered in determining spontaneity? You should be forewarned that you were sitting with probably the most… No. …august authority on excited utterances on the appellate court. He meant to say aghast. You're going to argue on excited utterances with Justice Gordon? Just beware. Yes. It could generate excited utterances. At least my law clerk's. The issue of the self-serving statement is not necessarily dispositive on excited utterances. There are cases that have held that even if the statement is self-serving, if the other criteria are met, then it is still admissible as an excited utterance. But it's within the trial judge's discretion. How are we going to say that this defendant returning to the scene and leaving and returning again and then telling the policeman on the scene, I hit him, that that is still a statement made while under the grip of the original trauma of the accident? If the judge decides that this guy has an ax to grind here and he's not that excited anymore, how are we going to say he's wrong? I believe that the excited utterance, the issue of the timeline is that… It's for the judge, the trial judge, to work out, isn't it? It is. It is an abusive discretion standard. But there's another issue with the statement, is that because the statement didn't come in as part of the course of the police officer's investigation, the jury was left with an improper view that when Mr. Bowens returned to the scene, he got out of the cab and was summarily arrested by the police officers after they had been questioning witnesses. So it leads the jury to believe that there was some other event that occurred, like a witness identification or some other event that led the officers to arrest Mr. Bowens. Well, they left the scene of an accident, so he comes back. But he's still committed, I believe, probably it's got to be either a high misdemeanor or a felony to leave the scene of an accident. When there's a killing, it's probably a felony. I'm not certain of that. But that would warrant arrest, even if he comes back to confess. But the issue was that he didn't come back in a vehicle. He came back twice, didn't he? No. He was there? No, he did come back a second time. Yes. And he came back in a taxi cab. So to the jury, what it looks like is that an unknown person arrives at the scene in a taxi cab and is arrested. But that there's no completeness of the story where he makes the statements to the officer and identifies himself as not just some guy in a cab, where he identifies himself as the person who was involved in the accident. You're not going to find, you know, any criminal case that's ever going to – at least I couldn't find any, and I don't know that there were any cited where a defendant – Well, actually – A defendant after – well, what? What is there? No, well, no, I was thinking that it might be a declaration against interest to the extent it's against his penal interest. But for that, you'd need unavailability. And unfortunately, he's available but for the Fifth Amendment. Yes. Well, the cases are pretty obvious that this would not be an admission because he's using it in his favor. But I haven't found a criminal case where a defendant, after having committed the act, has been permitted to use a statement in his favor as an excited utterance when he also did not testify and was subject to cross-examination. But in tandem with this argument that the judge ruled in favor of the state on the motion in limine to keep out those statements, are you going to comment how the state then, in closing, used this same comment, sort of, or suggested that there was no claim that he made a call or did anything to help and yet argued to the jury? Yes. The additional issue with this statement is that, in closing, the state's attorney mentioned that Mr. Bowens had not called 9-1-1, which was incorrect. His statement to the police when he arrived on the scene was, I was involved in the accident. I called 9-1-1. There had been two 9-1-1 calls from Mr. Bowens, and it also presents the improper suggestion in the jury's mind that Mr. Bowens did not call 9-1-1 when he actually did. How do you characterize that? That isn't a misconduct of some sort, but how do you characterize it? What do you call it, and is it misconduct by the state or misconduct of a more personal nature on the part of the prosecutor? I believe it was, it wasn't misconduct. Because technically, the record did not show any call by him to 9-1-1. Now, why didn't the record show it? Because his testimony was excluded. But it's not a lie to say that there is no record of his calling 9-1-1. On the other hand, it's terribly provocative. There's no denying that. And if there would be a way of characterizing it that would be decisional, it would play a part. Yes, the characterization of the evidence was correct. There was no evidence presented in the trial that Mr. Bowens called 9-1-1. However, the state was aware that there were 9-1-1 calls made. How does that become operational in deciding the case? I believe when you look at the overall picture of the case, the errors involving the cross-examination of Ms. Childress and the suggestion that Mr. Bowens did not call 9-1-1 give Ms. Childress' testimony more weight and her testimony towards intent that this was an intentional error. But his description that he didn't call 9-1-1, if he simply said the record does not show that anyone called 9-1-1, then you couldn't criticize him, even though I frankly on a personal basis wouldn't try my cases that way. Now, how is it aggravated by the fact that he said that he didn't call 9-1-1? I believe it's aggravated because I feel that it goes towards the intent issue. The closing argument was... Well, first of all, let's assume just because he said that he called 9-1-1, even if it was admitted into evidence, it doesn't have to be believed. So if the state wanted to argue he's lying and says he called 9-1-1, I suppose that would be less onerous. These are rhetorical questions. Those are questions that we're going to have to weigh and debate and from which we might get some elucidation from the state. Is there anything more? I have no further... We would just ask that this case be reversed and remanded for a new trial. Thank you, Counsel. Thank you. We'll give you an opportunity to rebut after the state has made its presentation. Good morning, Your Honor. Once again, my name is Bill Toffinetti. I'm an assistant state's attorney. Defense counsel asked Mrs. Childress if she had worked with Mr. Rio's sister, not mother, sister. That's what he asked. And if the answer had been no, that would have been a true answer. If Mr. Comey had asked the judge for a sidebar in which he had been able to explain why he was asking this question, the judge would have known the relevance, if any. He would have known the basis. Well, why wouldn't he know from this question that he was looking for an answer, yes, I did work with the victim's mother? Why wouldn't that be enough of a direction so as to pass muster on the Supreme Court's analysis? Because he didn't ask about the victim's mother. He asked about the victim's sister. Some judges would have asked defense counsel for his reason, wouldn't they? I'm sorry? They wouldn't have asked for an offer of proof. They would have said, Counsel, what's the purpose in your asking the question? They would have invited the offer of proof. Some judges do that. There's no obligation on the judge to do that. All right? The judge is asked to rule upon the objection. The judge rules. If defense counsel knows more than his parent. But isn't this question guiding the court into anticipating an answer, that there was an affinity through common employment? It would be within the judge's discretion to allow him to go further. Or to even seek an offer of proof. Or to seek an offer of proof. Yes. Yes. I mean, the onus is upon the defendant. Okay? Well, I'm sorry. The defendant has the obligation to preserve an allegation of error. And the way to preserve the allegation of error in this instance is to demonstrate to the court in a timely fashion. All right. Well, in this particular case, this is a special circumstance. The layer of evidence establishing the crime, and certainly establishing the degree of the crime, hangs on this fragile testimony of a witness about to be impeached, but prevented from doing so over a technical justification that there was no offer of proof. How will our Supreme Court view that? If they decide to take an interest in these facts, or put it in a more stark fashion, why should somebody spend 28 years in jail because his attorney failed to make an offer of proof? If defendant wishes to preserve the evidence. And the answer is that's what the post-conviction act is all about. And we can talk about it substantively. But we don't know what the evidence is going to be. Because the only thing defendants can establish is to quote his own motion. And his own motion talks about may rather than is. There's no after. David, there's no. Let me ask this. If the testimony came in that what we would presume are what the defendant claims now the testimony would have shown, wouldn't that automatically entitle this defendant to a reckless homicide? No, absolutely not. Why not? Isn't that, wouldn't that inferentially constitute some evidence that there was simply reckless homicide? It does not constitute any evidence as to what was in defendant's mental state. It only constitutes evidence as to what the victim, Mrs. Childress. Would it not raise a question as to the reliability of the only evidence establishing that mental state? I disagree that she is the only evidence. Okay? What else is? We have the evidence of Mr. Pettis. Mr. Pettis said, first of all, he saw the victim talking to the defendant in the parking lot where Mrs. Childress saw the car back up. We also know that Mr. Pettis was walking on the sidewalk and the car barely missed him on the sidewalk. We also know that Mrs. Childress. That could have easily been reckless behavior, barely missed me. Maybe as to that particular defendant. You know, what you cited for a case. Maybe to. What you cited for a case for not giving the instruction is a shooting case. Right. Now, if we looked at all the cases that there are where people have been, the conviction has been affirmed for reckless homicide or people running somebody over with a car. That alone indicates that this is traditionally or has been a type of conduct that amounts to reckless behavior. Striking people with cars after accidents, people get charged with reckless homicide. But you cited a case where someone took a gun and shot it at someone's head. Certainly. But that's not similar at all. The question is, should there have been a involuntary manslaughter instruction in this case? And Pettis, by the way, did not testify at all about the actual striking of Mr. Rios by the car. Mrs. Childress testified about that. Yes, she did. She did. And I grant you that. And she clearly saw it. Of course, she would have. And we're back to question one. Now, it seems to me that the only real answer you have to that, at least as far as the question is concerned, not as far as the disposition of the case, but as far as that question, is what Justice Kale suggested, that that would not prove recklessness. That may very well be innocence. And this raises a second question. If a witness is impeached, is the jury obligated to take it all or leave it all? Or could that be a basis for the jury believing the witness when she said she saw him hit the victim but not believe the witness that he paused first, that he stopped or decelerated first and then sped up? What are we to do? All right. Let me answer two parts. We know that she saw the impact. Otherwise, she would not have come running. Okay? We also know that the impact was done at a fairly high rate of speed, sufficient to cause the victim to fly up over the hood, over the windshield, onto the top of the car, and then back. No one testified to that, did they? What? Did she give a speed? She didn't give a speed. Did any expert or anyone testify that this had to be at a high rate of speed because he went up onto the car and then fell onto the? When we're talking about a pedestrian. I'm just asking you. I don't recall any of that being in the record. I believe she said 20, 25 miles an hour. All right. Mr. Pettis said it was going very, very quickly. When we're talking about a car hitting a person, okay, it's a relative thing. You know, a car hitting a car at 20 miles an hour might not cause a lot of damage. But now I think you're really going outside the record when you talk about how much of an impact this car going at 20 to 25, how much of a difference that is between hitting another vehicle. I mean, nothing like this is in this record. No, there wasn't any expert testimony in this regard. Let me add something else that is the 800-pound gorilla in this case, and that is that there's no motive. Now, you don't need a motive to prove any guilt for murder. But it certainly would compel a second look at the weight of the evidence that establishes the crime if you have no motive. Your Honor, you are quite correct. We don't have to prove motive. Right. But we have to prove that the defendant did a specific act with a specific mental state. And now you're proving it through a witness who is on the brink of being impeached, but who was erroneously prevented from completing the impeachment. And that error has now been, as the Supreme Court now makes the call, forfeited by virtue of a failure to make an offer. You are making an unwarranted presumption, Mr. Justice Gordon. You are saying that she was going to be impeached. We don't know that. That's not in the record. Well, if we take what's in the brief right now. Well, the brief is not evidence. What about the other witness that said she didn't provide any pictures, but the defense witness testified that I stood in this spot and was not able to view anything that this woman said she viewed. You're right. She didn't produce any pictures. Why not? Doesn't that go to her credibility? The question is, was there something here to permit the defendant to have the involuntary instruction? I don't think we have to go beyond the evidence of this case. What we know, and what we certainly know, is that he turned out. Excuse me. I'm going to ask you a question, all right? Now it's my turn. What kind of cases did you cite in your brief that in any way suggests, that suggests at all, that when you have testimony of one person who says I saw him in the car and the car seemed to pause and then it sped up and he struck this person? Where in the annals of all the Illinois authority that we have did you show us a case like this that amounted to a murder verdict? You used a gun case. I looked for a case and I could not find it. That's because most of those cases show an affirmance for a reckless homicide when somebody struck another individual. Yes. If the defendant had been charged with reckless homicide. Your testimony for the intent, intent for murder in this case is established by Mrs. Childress. Okay? If the defendant had been charged. There's not a single case like this. If the defendant had been charged with reckless homicide and found guilty, that would certainly be affirmed. Okay? But he was charged with murder and not reckless homicide. Right. I did not look at cases where a defendant was charged with reckless homicide because that's not germane to my case. The question is whether he should have gotten the involuntary instruction based on the testimony in this record. Based upon what? The mere fact that Mrs. Childress may or may not have seen him pause. Okay. That might be the difference between intentional murder and knowing murder. But we do know beyond any doubt that he pulled the trigger. Why wouldn't there also be a basis for a reckless homicide? Why not? Why not reckless? Where are you going with that? If there is no deceleration of the car and all you have is a witness saying that he saw this car strike the victim while it was moving, where do you get off the fact that no involuntary manslaughter instruction is required and that we don't have inferentially some evidence that it may have been involuntary? She testified. I was kind of shocked, if I might, finding in your brief, in dealing with the impeachment of Mrs. Childress, a statement after all is said and done. Now, all we have here is a statement that she decelerated. Well, that's the whole ballgame. Right. All right. Look, we know that the defendant pulled the car onto the sidewalk. Not onto the street. Onto the sidewalk. Okay. That's deliberate action. That would easily be reckless action, too. Not when you use the car. Yes, people have driven up onto sidewalks recklessly. So you can't say there's numerous cases out there that say when you drive on a sidewalk you're doing something deliberately. You don't have a case in here that even suggests that. We're not dealing with the fact that this person would otherwise be proven innocent. He may well have intended the murder. We don't know that. On the other hand, what we're dealing with is the requirement that the law imposes for a lesser included offense instruction. And the requirement for that is slight evidence. There is not slight evidence. That can be inferential. If you had not established deceleration, would you have been entitled to your verdict at all? And would you have been able to say, well, there's no basis in this evidence to accommodate to a possibility of involuntary homicide? Given the fact that they knew each other. Given the fact that the defendant deliberately pulled his car onto the sidewalk. You're shifting gears. You're dealing now with the quality of this impeachment. Absolutely. But that's shifting gears from your earlier statement that there would be still no evidence of recklessness. There is no evidence of recklessness. The mere fact that this took place with a car does not mean he automatically gets a reckless homicide instruction. He used the car as a weapon, okay? This was a deliberate act. You're getting that from the testimony of Ms. Childress who testified that he paused and then he accelerated. And from that, you're saying that you've established intentional killing and a knowing killing. That doesn't answer the question whether or not this same testimony can support a request for an involuntary manslaughter instruction. Where's the case that says so? Because recklessness is defined as a killing without lawful justification that results in the death of another individual. Now you have her saying that the car sped up. So from that, you've got your verdict. The question is, did the defendant have a right to have an instruction to the jury that this evidence, if you find that this was reckless behavior, you know, I'm not going to quote the IPI right now, but the point is, was he entitled to that under this kind of evidence? Not with this evidence, no. We're not talking about joyriding a car. We're not talking about, there was no testimony about his intent from anybody. And Ms. Childress testified as to what she observed him do with the car. How does that translate into his intent because they knew each other? How does that translate into his knowledge? And in fact, at the grand jury, there was no testimony about any intent, any knowledge. We know you're not required to show a motive, but you don't even have that. So the point is, does he get the involuntary instruction when another witness says, I was not able to see at all what she claims she was able to see? Is there any evidence, however slight, to get the instruction before the jury on these kinds of facts? This isn't your typical shooting with a gun. It's not a stabbing. It's a car that pulled up on a sidewalk and killed someone. And I don't know what the facts are about. There's not much in there other than that they were at a party earlier, they knew each other, they had a relationship, and that's it. With the low threshold for involuntary, we don't need a high threshold for it. But there is a threshold. There is a threshold. Slight evidence. Slight evidence. And I'll go further than that because I've taken the position that slight evidence means the evidence has to be sufficient to support a verdict if the jury went that way. There is no evidence that would support a finding, a rational finding, that he acted with anything other than intent or knowledge of a deliberateness of attempting to strike Mr. Rios with a car. Supposing you simply do not sufficiently establish intent or knowledge, but you establish the commission of the act, but you do not have evidence to establish the state of mind, will that require a finding of innocence or could it also require a lesser included offense instruction? The one thing you can't tell me is that it could still support a murder warrant. I'm not sure I understand. If you fail to establish state of mind, but you establish the act, the cause and effect, the act and the death caused by the act, what result should you then expect? A directive verdict of acquittal is what I would suggest. No. If not, a lesser included offense. And you take it from there. A person is presumed to intend the natural consequences of his actions. He drove his car onto the sidewalk and he accelerated his car, even if he didn't tell you. No, no, no, listen. Don't change my facts. I'm making a hypothetical only because I can hold you to the fact. Assume there is no evidence establishing state of mind. I find it very difficult to make that assumption. I don't understand. The state of mind is inferred from what he did. Well, all you have is a witness saying in my hypothetical, I saw him on the sidewalk, run his car into the victim. Nothing more, nothing less. Under that bare bones. And life is difficult for all of us at times, Mr. Toffanetti. It's your job to ensure that. Do you want to sum up, Mr. Toffanetti, before? Well, let him answer that question. Oh, I will. No, no, no, let me. I'm trying to save him from being beaten. No, no, I think I need an answer of some sort. Because this is a hard case. That surprises me. I don't see it as a hard case. I see it as a very obvious case. The obvious case is that you got your verdict. And the question is, it's not whether this evidence supports that guilty verdict. That's really not the issue. And I hope I'm not making you think that. It's not whether you had proof beyond a reasonable doubt. It's whether an instruction on a lesser-included offense should have been given, whether there was any evidence, however slight. That's all. There's no difference between having enough evidence to support a verdict. My response in sum is this. The evidence in this case does not admit to any other crime. It does not admit to recklessness. If there was something in the facts, not as we know them, but as they were, that would change that, then it's the defendant's obligation to somehow put that before the court. But it's not in our case. It's not in our evidence. It's not about the defendant putting in anything. Okay. Well, I'm willing to let you move on. You know, we tried. That's the issue. That's an issue in this case only if your offer of proof defense should prove not to work. I don't want anyone to have the impression that we're somehow disregarding that. We're not. But this is where we would go if we would not accept the failure to make an offer of proof as a complete defense against the failure to allow the impeachment, if it was impeachment. Where do you go with the statement of the prosecutor in closing argument that he didn't make the call, which flies in the face of evidence which was presented but excluded on motion of the same prosecutor? The prosecutor did not say, even inferentially, that the defendant never made a 911 call. But the prosecutor, in fact, both of them addressed this, what they said in their arguments, they were describing specifically, okay, what the defendant did at the scene. Okay. Did he show any emotion? Did he say anything? Did he attempt to render aid? Nobody said he didn't take out his phone and make a 911 call. That's not in the argument. Okay. What they talked about was to describe specifically what he did at the scene. Curiously, what would be the case if the prosecutor actually misrepresented what he did by ignoring evidence that was introduced but barred? I'm very curious about that. I don't think it would change anything because it doesn't go to an essential point. It would not be fatal. It doesn't go to an essential point, okay? The fact that the defendant made a 911 call in which he said he had an accident and struck this person, that's not admissible evidence, okay? And the argument that it – Well, I wonder if the judge would have ruled differently if she knew at the time that the prosecutor was going to later argue that he really did nothing, you know, to call for assistance or aid when, in fact, he did call 911. But how does that change anything that's true of the case? I don't think that the prosecutor should have said that he really did nothing. He just stood there like when, in fact, he had called and said, I had an accident, I hit this person. I mean, I don't think the judge would have ever ruled that way had she known that the prosecutor was later going to argue he basically did nothing, said nothing, when, in fact, he had made a call. Why else would somebody call 911? Apparently he did it twice. All right. The prosecutor didn't talk about that, but I would say this, that the defendant can't point to anything – first of all, the defendant didn't object when this argument was made, okay? So we have to go to the plain air rule, and the plain air rule doesn't admit to any prejudice here because how does this hurt him? How does this go to an essential point? And even if the argument – But if he wanted to get in the statements, this was an accident, that's what he wanted to get in. So it does go to – And that is absolutely inadmissible evidence. Well, I mean, I'm not saying that I would have allowed that statement, but if I knew that a prosecutor was going to later argue he really didn't say anything, he didn't call 911, whatever, the suggestion was that he really stood there and did nothing to help. I would not have ruled that you can't – that none of this can come in when you're going to kind of use it against that person later. I don't think that's fair. The defendant wanted to get in – what the defendant wanted to get in was not the fact of a 911 call. What the defendant wanted to get in was the statement this was an accident,  without taking the witness stand and subjecting himself to cross-examination. And that is absolutely impermissible. Whether or not the judge would have allowed testimony as to the fact of a 911 call, I think is probably – that's a different question. I think the judge may well have gone the other way, especially in light of if the state had any indication that it was going to make that argument. But that's just not the fact of the case. The argument was made specifically based upon the actual evidence of what the defendant did and what his demeanor was. And his demeanor at the scene may have contradicted any claim of concern of calling 911. I mean, this could all be part of his defense of attempting to present to the police, to the state, to the jury ultimately, his defense that this was in fact not a deliberate act, whereas the evidence shows that it is a deliberate act. Thank you, Mr. Duffin. You're more than welcome, Mr. Justice Kennedy. Thank you. You survived. Ms. Blaine, a final word? Briefly, Ms. Blaine. Very briefly, just to sum this all up, what this case comes down to is a credibility contest between Ms. Childress and Ms. Archer. The key to this case is intent. And the two witnesses testified that Ms. Childress testified that she saw the car accelerate and then strike Ms. Maria. Is it fair to call Archer a witness, unquote? Archer was an accident reconstructionist. She was an accident reconstructionist. She didn't witness anything. She went to the scene afterwards and based on input from the defense, she created a scenario. Right. I don't think she consulted with the prosecution, did she, before she? I don't believe so. No. Okay. But based on her testimony that Ms. Childress' line of sight was impaired and that she could not have seen the car accelerate from the vantage point where she was standing, we get into the credibility contest on the issue of intent, which goes to the jury instructions for murder and rape and somicide. Why don't you take a swing at the question, what happens if you don't establish any state of mind? What then? Is there a room for a lesser-included offense? Or at that point, does it have to be an acquittal? There is room for a lesser-included offense. Because the jury could find, based on the other evidence, that there was a car driving on the sidewalk and it struck a person. So, in other words, with this reconstruction testimony, if it were to be placed and given the weight, even with the testimony of the witness, Childress, would that allow for a lesser-included offense? Or would you still be able to argue there is no evidence of a lesser-included offense? There is evidence of actual innocence or guilt, but there's no intermediate evidence. I think that you would be able to argue that there is evidence of the lesser-included offense. How is that? Based on the fact that the jury could believe part of Ms. Childress' testimony and part of Ms. Archer's testimony. I suppose they could also consider, you haven't made this argument, but Mr. Narcissi was called by the defense purportedly to explain that at the party that they were both at, they got angry with each other. At least the defendant got angry with the victim. Well, whatever they were arguing about, he broke a pipe. And I don't imagine the pipe contained ordinary tobacco. Well, there was a toxicology report that indicated the victim had some trace of cocaine. And was there testimony that there was drinking at the party? I believe there was drinking. So you could infer that they had some kind of passionate exchange when he broke the pipe. There might have been words, there might have been this, there might have been that, and that could have carried over so that he was still in an angry state of mind when he got into his car. Yes. You could have argued that, but of course you didn't. No, I did not. Okay. But you argued for involuntary instruction. Right. Yes. Anything else? That's all. Counselors, I want to thank you both. The case was well briefed. It will be taken under advice.